UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
STEVE VARGAS,                                                                    MEMORANDUM
                              Plaintiff,                                   AND ORDER
              - against -
CH HOSPITALITY                                                                   14-CV-2439 (ENV) (JO)
MANAGEMENT, LLC, et al.,
                              Defendants.
----------------------------------------------------------X

JAMES ORENSTEIN, Magistrate Judge:

       Plaintiff Steve Vargas ("Vargas"), acting through private counsel of record, filed his Complaint on April 16, 2014. Docket Entry ("DE") 1. On the same date, he filed a request to proceed *in forma pauperis*. DE 2; *see* 28 U.S.C. § 1915 (governing proceedings *in forma pauperis*). On June 20, 2014, I entered an order reprinted below in pertinent part:

> Although the plaintiff's affidavit in support of the motion satisfies me that his indigency makes him eligible for relief, *see* 28 U.S.C. § 1915(a)(1), an application to proceed *in forma pauperis* "ordinarily should not be granted in a contingency fee context[.]" *Walker v. City of New York*, 2012 WL 6563044, at *1 (E.D.N.Y. Dec. 17, 2012); *Fodelmesi v. Schepperly*, 944 F. Supp. 285, 286 (S.D.N.Y. 1996) (same). I therefore respectfully direct the plaintiff's counsel of record to provide a copy of the pertinent retainer agreement by June 27, 2014, so that I can determine whether the motion should be granted.

DE 5.

       On June 23, 2014, Vargas's counsel filed a letter *ex parte* and under seal that described aspects of the agreement with Vargas but that did not include a copy of the retainer agreement. DE 6-1 (the "Letter"). Based on the Letter's contents, I concluded that the request to proceed *in forma pauperis* should be denied, and that there was no reason to maintain the Letter's secrecy; I therefore denied the motion and respectfully directed the Clerk to unseal the Letter. Order dated June 24, 2014. Vargas – or more precisely, his counsel – now asks me to re-seal the letter and to clarify my order of June 24, 2014. DE 9. For the reasons set forth below, I now deny the request to seal (but will direct the Clerk to seal the Letter pending the resolution of any challenge to the instant ruling), and clarify my earlier order.

A.  Sealing

I deny the request to shield the Letter from public view for two reasons. First, an analysis of applicable law persuades me that the public right of access to the Letter trumps the proffered reasons for maintaining its secrecy. Second, while counsel seeks to shield the terms of Vargas's representation from public scrutiny on the ground that disclosure of such "proprietary information" would harm Vargas and similarly situated indigent (but counseled) plaintiffs, *see* Letter at 2; DE 7-1 at 1-2; I conclude that the cost-shifting arrangement Vargas's counsel has described is irreconcilable with applicable law, and that disclosing the Letter therefore can harm no cognizable legitimate interest of any person. I discuss each reason in turn below.

1.  The Public Right of Access to Judicial Documents

The facts revealed in the Letter formed the basis for the argument in support of Vargas's request for judicial relief in the form of an order allowing him to proceed *in forma pauperis*. As a result, the common law recognizes a general, albeit not absolute, right of public access to the Letter's contents to ensure judicial accountability and public confidence in the adjudicative process. *See*, *e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 599 (1978); *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995); *In re Gushlak*, 2012 WL 3683514, at *1-*2 (E.D.N.Y. July 27, 2012) (report and recommendation), *adopted in full*, 2012 WL 3779229 (E.D.N.Y. Aug. 30, 2012). Vargas has the burden of persuading the court to exercise its discretion to seal the Letter. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

In deciding whether to remove the Letter from public view, I must determine whether it is a "judicial document" to which a presumption of public access attaches, consider the weight to assign to any such presumption, and then balance that weighted presumption against competing considerations.

*See, e.g., Lugosch*, 435 F.3d at 119–20. Briefly stated, the Letter is plainly a judicial document because it was filed in an effort to persuade me to grant a request for relief, and the presumption has significant weight because some, but not all, of the facts revealed in the Letter were central to my analysis of that request. More precisely, I relied primarily on the fact that Vargas's counsel has agreed to accept a contingent fee arrangement in deciding to deny the motion, and I rejected as a reason to decide otherwise the facts concerning agreements the attorney has reached with non-party service providers to allocate litigation costs. Finally, as explained more fully below, the possibility that revealing the facts of counsel's arrangements may undermine their efficacy does not persuade me to exercise my discretion to maintain the Letter *ex parte* and under seal.

In the Letter, Vargas's counsel reports that when representing a client on a contingent fee basis, the attorney does not advance deposition costs or other litigation expenses; to make such representation available to indigent clients, counsel has "been able to work out an arrangement whereas [sic] the court reporters/deposition companies have been paid from settlement recoveries." Letter at 1. Counsel further asserts, without elaboration, that revealing the latter arrangement "could prompt the deposition company to change [it] for fear of others requesting to have the same arrangement." DE 7 at 2.[1] If the described arrangement with the court reporter were permissible,

---

[1] Counsel also argued that "[o]pposing counsel could also use the information to further pressure my clients into unreasonable settlements so that my clients could avoid incurring deposition fees that they would subsequently have to pay out of pocket." *Id.* The latter argument is illogical to the extent the plaintiff would incur the same litigation costs regardless of when they would be paid, and the defendants would therefore have no reason to believe that Vargas's counsel's arrangement with a private court reporter could be used as leverage for settlement negotiations. To the extent that Vargas, unlike clients in more traditional contingent fee representations, would be responsible for litigation costs that would not be recoverable in the event of a loss at trial, his adversary might arguably have greater leverage in negotiating a settlement, but it is hard to accord that consideration much weight. The argument would in any event be made to counsel, not directly to the client, and counsel could properly advise Vargas about the risks and benefits of proceeding. If the risks of trial were so great as to give the argument much force, Vargas would have precious little negotiating leverage to begin with (and counsel would have similarly little reason to accept the contingent representation even under the terms at issue here). If the risks of proceeding to trial were not so great – that is, if Vargas and his

counsel's assertion about the effect of publicity on the arrangement's continued viability would weigh more heavily in the balance (assuming counsel could provide evidentiary support for the factual assertion, which I would provide counsel an opportunity to do before deciding the matter). But that arrangement is not permissible, as explained below in discussing my second reason for denying the motion to seal.

Further detracting from the weight of counsel's proffered interest in secrecy is the fact that regardless of the outcome of this motion, and of this case, the cost-shifting arrangement between counsel and the court reporter must inevitably come to light. If Vargas, or another client his attorney represents under similar circumstances, proceeds to trial and wins a judgment in his favor, he will have a statutory right to recover his reasonable litigation costs, including attorneys' fees. *See* 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 12205; New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(f); *see also* 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1). In seeking such a remedy, the prevailing plaintiff will necessarily have to disclose the cost arrangement Vargas and his attorney now seek to shield from public view. *See*, *e.g.*, *Spence v. Ellis*, 2012 WL 7660124, at *8 (E.D.N.Y. Dec. 19, 2012) ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested.") (quoting *Pennacchio v. Powers*, 2011 WL 2945825, at *3 (E.D.N.Y. July 1, 2011)); *Lee v. Santiago*, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("A mere assertion that a certain cost was incurred, though, is insufficient where such an assertion is made in a conclusory fashion . . . without a supporting affidavit, declaration, or documentation."). As a result, the only way Vargas's counsel could permanently maintain the secrecy of the cost-shifting arrangement – a goal that the attorney appears to sincerely

---

counsel could plausibly expect a favorable outcome – the argument would have less force for Vargas, and still less for the client represented by the same attorney in a later case because, as discussed below, a successful trial for Vargas would ultimately expose counsel's cost-shifting arrangement with the court reporter. I therefore accord little weight to counsel's argument about the effect of disclosure on settlement negotiations in balancing the public's interest in access against Vargas's interest in secrecy.

believe is to the advantage of all similarly situated clients, viewed as a group – would be to ensure that no such clients ever prevailed at trial, but instead resolved all cases by means of a settlement. At some point, that incentive would pit the interests of one client – who might otherwise find the risks of trial preferable to the best available settlement offer – against the interests of other clients whose access to counsel's services would be jeopardized by the revelation of the cost-shifting arrangement. In short, Vargas's attorney cannot effectively maintain the secrecy of the described cost-shifting arrangement without eventually laboring under a disqualifying conflict of interest.

2. The Letter Reveals an Impermissible Cost-Shifting Arrangement

Even if the Letter was not a judicial document to which the public has a right of access, I would decline to shield the described cost-shifting arrangement from public view so as to preserve its efficacy because that arrangement seems manifestly improper. As a result, there is no cognizable interest served by maintaining the Letter *ex parte* and under seal.

A court reporter who only recovers the costs of a deposition if the plaintiff wins the case cannot possibly be an impartial recorder of contested proceedings. As the National Court Reporters Association's Committee on Professional Ethics has opined, such an arrangement "undermines and dilutes the integrity of the reporting profession and the status of the reporter as a neutral and impartial 'officer of the court.'" National Court Reporters Association, *Advisory Opinion 17* (1994), http://www.ncra.org/About/content.cfm?ItemNumber=10167&navItemNumber=586.

Indeed, it is precisely to preserve such neutrality that the applicable rules explicitly disqualify a court reporter who has entered into the kind of agreement that the Letter reveals. *See* Fed. R. Civ. P. 28(c) ("A deposition must not be taken before a person … who is financially interested in the action."); *see also Sheppard v. Beerman*, 822 F. Supp. 931, 941 (E.D.N.Y. May 21, 1993) (identifying "the policy informing [Rule 28(c):] – to assure impartiality in the creation of the record of the deposition"), *affirmed*

*in part and vacated in part on other grounds*, 18 F.3d 147 (2d Cir. 1994); *Meacham v. Church*, 2010 WL 1576711, at *4 (D. Utah Apr. 19, 2010) (same, quoting *Beerman*); *cf. Wang v. Georgia Highlands College*, 2013 WL 1180790, at 2 (N.D. Ga. Feb. 11, 2013) (holding that Rule 28(c) did not apply where there was no indication that the court reporter had a financial interest in the action). Thus, a wholly independent reason to deny the motion to seal is to make clear to Vargas's counsel, and to any other attorney who may be laboring under a similar misunderstanding, that a court reporter may not secure a contingent fee in reporting a deposition.[2]

B.     <u>Clarification</u>

Vargas seeks clarification of two issues. The first is whether, in light of my denial of the motion to proceed *in forma pauperis*, counsel's retainer agreement with Vargas must still be submitted for my review. *See* DE 9 at 1, 3. The answer is no: the Letter included sufficient factual assertions to allow me to decide the motion that was then before me, and I have no other need to see the retainer agreement at this point (though it may be needed later should Vargas prevail on his claims and seek the

---

[2] Because there is no information that must be kept secret to preserve any person's legitimate interest, I order the unsealing notwithstanding counsel's assertion that the Letter was filed in reliance on an assurance from a member of my chambers staff that filing it under seal "would ensure that [it] would remain confidential and would not be revealed to anyone other than the Court at any time." DE 9 at 2. The law clerk to whom counsel spoke, who consulted me before responding to counsel's repeated *ex parte* telephone calls to my office, gave no such assurance, and I would not and did not make any such promise. It is to avoid such misunderstandings that I generally do not accept *ex parte* telephone calls from litigants or their attorneys (save in, occasionally, the context of settlement negotiations where the parties unanimously consent in advance to such communications). Vargas's attorney's repeated telephone calls to my office and insistence on discussing the matters addressed in this document, prompted me to issue an order explicitly prohibiting any more such calls. *See* Order dated June 25, 2014 ("Plaintiff's counsel is respectfully directed to cease *ex parte* communications with the court. Any request for relief must be made in writing and filed on the docket. Such requests may not be filed under seal unless permission is granted by the court."). In any event, while I assume that counsel's subjective understanding of my law clerk's statements is sincere (even though I am confident that it is objectively mistaken), the disappointment of counsel's expectation in that regard serves only to jeopardize counsel's interest in continuing to engage in cost-shifting with court reporters. Because that is not a legitimate interest for the reasons set forth above, counsel's asserted reliance interest in continued secrecy cannot be dispositive.

reimbursement of reasonable attorneys' fees). That said, Vargas and his counsel are of course free to submit the retainer agreement in support of a request for reconsideration if they deem such a motion to be warranted; they are, however, under no such obligation at this stage of the case.

Second, Vargas seeks clarification of the meaning of my denial of the motion to proceed *in forma pauperis*:

> Specifically, Plaintiff's understanding is that Plaintiff's filing fees were already waived in April, 2014, when Plaintiff filed the Complaint. Therefore, Plaintiff's understanding is that the Court's June 24th Order does not disturb the waiver of court filing fees. Rather, the June 24th Order directs Plaintiff to effect service of the Complaint on Defendant, rather than requesting that the U.S. Marshalls [sic] effect service. If Plaintiff's understanding is not correct, then Plaintiff respectfully requests to be notified of this, so Plaintiff can respond accordingly.

*Id.* at 3.

I clarify my earlier order to specify that in denying the motion to proceed *in forma pauperis*, I declined to waive the usual filing fee and also declined to direct the United States Marshal to effect service. The cases cited in my original order do not explicitly distinguish between those two forms of relief available to plaintiffs proceeding *in forma pauperis*. *See* DE 5 (citing *Walker*, 2012 WL 6563044, at *1; *Fodelmesi*, 944 F. Supp. at 286). Moreover, attorneys practicing on a contingent fee basis in this district routinely file cases on behalf of indigent plaintiffs without seeking to proceed *in forma pauperis* and thereby having the filing fee waived. I am therefore confident that even if Vargas's current counsel is not willing to advance litigation costs and secure reimbursement from any later recovery Vargas may obtain, denial of the filing fee waiver in this case will not generally chill the ability of indigent plaintiffs to secure counsel to represent them in discrimination and civil rights cases.

Filing fees are an important source of some of the funds that enable the judiciary to fulfill its constitutionally prescribed duties to all litigants and to the public. The judiciary's institutional interest in securing adequate funding must of course give way in a specific case if requiring the fee will deny a

7

litigant access to the court. But where both interests can be vindicated, they should be. Because Vargas has not satisfactorily demonstrated that the enforcement of the fee requirement in this case will impair his ability to prosecute his claims, I decline to waive the fee.

C. Conclusion

For the reasons set forth above, I deny the motion to maintain under seal the plaintiff's letter of June 23, 2014; and I clarify my order of June 24, 2014, to specify that the filing fee has not been waived and that the plaintiff's counsel need not file the plaintiff's retainer agreement with counsel. The foregoing order is a non-dispositive ruling that the plaintiff may contest by seeking review by the assigned district court judge and demonstrating that this order is clearly erroneous or contrary to law; any such challenge must be filed by July 14, 2014. *See* Fed. R. Civ. P. 72(a). To accommodate the possibility of such review, I respectfully direct the Clerk to re-seal the plaintiff's letter and to maintain it under seal until the later of July 14, 2014, or the resolution of any request for review.

SO ORDERED.

Dated: Brooklyn, New York
June 27, 2014

_____/s/_____
JAMES ORENSTEIN
U.S. Magistrate Judge